**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNIVERSAL PROTECTION SERVICE, LLC, D/B/A ALLIED UNIVERSAL SECURITY SERVICES, | Case No.  1:23-cv-10617 |
| Plaintiffs, | |
| v. | |
| SALIH KOC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Dated: December 5, 2023

/s/ Ezra Alter
Ezra H. Alter, Esq
Martenson, Hasbrouck & Simon LLP
40 Exchange Place
Suite 1502
New York, NY 10005
(332) 345-2476
ealter@martensonlaw.com

-and-

Matthew D. Crawford, Esq
Pro Hac Vice Application Forthcoming
Martenson, Hasbrouck & Simon LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30319
 (404) 909-8101

Attorneys for Plaintiff
UNIVERSAL PROTECTION SERVICE, LLC, D/B/A
ALLIED UNIVERSAL SECURITY SERVICES

## TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 1

    A.    Allied Universal Employed Koc as a Management-Level Employee Who Was Exposed to Allied Universal's Highly Valuable and Confidential Business and Client Information................................................................................................ 2

    B.    In Connection With His Employment, Koc Executed Multiple Restrictive Covenant Agreements to Protect Allied Universal Against Unfair Competition Associated with Koc's Exposure to Its Confidential Business and Client Contacts. ...................................................................................................................... 3

        1.    The Employment Agreement. ..................................................................... 3

        2.    The Incentive Units Agreement. ................................................................. 7

    C.    Koc's Resignation from Allied Universal................................................................ 8

    D.    Koc's Substantial Violations of the Agreements. .................................................... 8

        1.    Koc Misappropriated Extensive Amounts of Confidential Information, in Violation of Paragraph 3 and 4 of the Incentive Units Agreement and Sections 4 and 6 of the Employment Agreement......................................... 8

        2.    Circumstantial Evidence Strongly Suggests that Koc is Planning to Violate the Non-Compete Provisions of his Restrictive Covenants ...................... 10

III.  ARGUMENT AND CITATION OF AUTHORITY ......................................... 11

    A.    Legal Standard for Temporary Injunctive Relief. .................................................. 11

    B.    Allied Universal is Likely to Prevail on the Merits of its Breach of Contract Claims ................................................................................................................... 11

        1.    Koc is in Breach of the Agreements. ....................................................... 12

        2.    The Non-Compete and Customer Non-Solicitation Provisions in the Agreements Are Enforceable Under New York Law. .............................. 14

        3.    Allied Universal Is Likely to Succeed on Its Trade Secrets Claims Because Koc Misappropriated Allied Universal's Trade Secrets. .......................... 17

    C.    Absent Injunctive Relief, Allied Universal Will Suffer Irreparable Harm for Which Compensatory Damages Would Not Suffice ............................................. 19

    D.    The Balancing of Hardships is in Allied Universal's Favor ................................. 20

    E.    The Issuance of an Injunction Is in the Public Interest. ........................................ 21

IV.   CONCLUSION........................................................................................................... 22

## **TABLE OF AUTHORITIES**

### **Cases**

*34-06 73, LLC v. Seneca Ins. Co.*,
 39 N.Y.3d 44, 52 (2022) ................................................................. 12

*AUA Priv. Equity Partners, LLC v. Soto*,
 No. 1:17-CV-8035-GHW, 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018) ........................ 17

*BDO Seidman v. Hirshberg*,
 93 N.Y.2d 382 (1999) ............................................................... 14, 15

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
 444 F. Supp. 3d 1198 (E.D. Cal. 2020)............................................... 19

*Frenkel Ben., LLC v. Mallory*,
 142 A.D.3d 835 (1st Dept. 2016).................................................... 15

*Iacovacci v. Brevet Holdings*, LLC,
 437 F. Supp. 3d 367 (S.D.N.Y. 2020)............................................... 17

*Integra Optics, Inc. v. Messina*,
 Docket No. 900610–16, 41 N.Y.S.3d 719 (N.Y. Sup., Albany County, July 15, 2016) .. 15

*Intl. Bus. Machines Corp. v. Papermaster*,
 08-CV-9078(KMK), 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008).............................. 20

*Lerario v. Newyork-Presbyterian/Queens*,
 No. 20-CV-6295 (JGK), 2023 WL 4847141 (S.D.N.Y. July 28, 2023) .......................... 11

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club*, Inc.,
 103 F. Supp. 3d 244 (N.D.N.Y. 2015)............................................... 20

*Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*,
 No. 07-CV-1562 (ERK) (RML), 2008 WL 207843 (E.D.N.Y. Jan. 24, 2008) ............... 19

*New York el rex. Schneiderman v. Actavis PLC*,
 787 F.3d 638 (2d Cir. 2015)...................................................... 11

*Novendstern v. Mount Kisco Med. Group*,
 177 A.D.2d 623 (2d Dept. 1991) .................................................. 16

*QBE Americas, Inc. v. Allen*,
    No. 22-CV-756 (JSR), 2022 WL 889838 (S.D.N.Y. Mar. 25, 2022 ............................... 14

*Register.com, Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004) ............................................................................................... 19

*RKI, Inc. v. Grimes*,
    177 F. Supp. 2d 859 (N.D. Ill. 2001) ................................................................................ 18

*TBA Global, LLC v. Proscenium Events, LLC,*
    114 A.D.3d 571 (1st Dept. 2014) ...................................................................................... 15

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63, 69 (2d Cir. 1999) .......................................................................................... 19

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
    350 F. Supp. 3d 143 (E.D.N.Y. 2018) .............................................................................. 19

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021) ................................................................................. 16

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7, 24, (2008) ....................................................................................................... 20

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021) ......................................................................... 18, 19

**Statutes**

18 United States Code
    Section 1836 ....................................................................................................................... 17

18 United States Code
    Section 1839(3) .................................................................................................................. 17

18 United States Code
    Section 1839(5) .................................................................................................................. 17

## I.    __INTRODUCTION__

Plaintiff Universal Protection Service, LLC d/b/a Allied Universal Security Services (collectively, "Allied Universal" or "Plaintiff"), by and through its undersigned counsel, file this Memorandum of Law in Support of its Motion for a Temporary Restraining Order and for an Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion") against former employee, Salih Koc ("Koc" or "Defendant"). Koc resigned from Allied Universal to work at a competitor firm and took with him trade secrets and confidential information that he still refuses to return. Allied Universal seeks immediate injunctive relief against Koc, in order to prevent him from misappropriating its trade secrets and engaging in misconduct that violates two agreements he signed with Allied Universal that contain post-employment restrictive covenants.   Allied Universal respectfully moves on an expedited basis for the issuance of a temporary restraining order pending a hearing on a preliminary injunction, enjoining Koc's conduct to preserve the status quo.

Unless the requested relief is granted, Allied Universal will suffer irreparable harm for which there is no adequate remedy at law. Allied Universal is likely to succeed on the merits of its claims. The balance of hardships favors Allied Universal, and the requested injunctive relief will not negatively impact the public interest. For these reasons, the Court should grant Allied Universal's requests in all respects.

## II.    __FACTUAL BACKGROUND__

Allied Universal is a security services company. It provides customized security solutions to a wide array of businesses and sites, including retail establishments, hospitality, offices, storage facilities, construction sites, and other locations throughout the United States, including the State, City and County of New York. (*See* Declaration of Scott Lorberbaum ("Lorberbaum Decl.") at ¶

3). Allied Universal employed Koc as a Client Manager from March 6, 2023, until November 16, 2023. (*Id.* at ¶ 6).[1]

A.    **Allied Universal Employed Koc as a Management-Level Employee Who Was Exposed to Allied Universal's Highly Valuable and Confidential Business and Client Information.**

Koc held the position of Client Manager for Allied Universal, overseeing certain business operations in New York City, primarily services for luxury retail, from March 2020 to November 2023. (*Id*). Koc's role as a Client Manager was important to Allied Universal's business operations in New York City, as he was responsible for leading its luxury retail business and managing approximately 250 security professionals, including operations managers, shift supervisors and security guards.  (*Id*. at ¶ 8). To enable Koc to function properly as a Client Manager of his region, Allied Universal provided him with access to highly confidential and trade secret information pertaining to Allied Universal's operations, including pricing information such as bill and pay rates, client proposals, transition planning, and customer contacts for Allied Universal's customers and clients. (*Id*. at ¶ 10). Koc handled a wide range of responsibilities, including client relations, and staff activities, while overseeing a substantial book of business, generating an annual revenue in excess of ten million dollars. (*Id*. at ¶ 11). Koc possessed and exercised significant managerial discretion and independent judgment in his role as Client Manager. Allied Universal's Client Managers are entrusted with making informed decisions that align with Allied Universal's commitment to providing exceptional security services. (*Id.*) This discretion allows Allied Universal's leaders to assess unique situations, implement solutions, and respond to evolving security challenges. Allied Universal's Client Managers wield a crucial responsibility in exercising their managerial discretion when making hiring decisions. (*Id*).

---

[1] Koc was previously employed by a company called SOS Solutions, Inc. that Allied Universal acquired. Allied Universal retained and hired Koc in the transition. (*Id.* at ¶ 4-5).

During his tenure as Client Manager, Allied Universal devoted significant resources to fostering Koc's relationships and acquaintances with clients. (*Id*. at ¶ 12). Koc was expected to become familiar with Allied Universal's clients and their specific needs and preferences. He was also expected to make regular site visits and respond to any problems or concerns. (*Id*). These relationships were nurtured for Allied Universal's benefit and not for Koc's individual gain. (*Id*)

    **B.**    <u>**In Connection With His Employment, Koc Executed Multiple Restrictive Covenant Agreements to Protect Allied Universal Against Unfair Competition Associated with Koc's Exposure to Its Confidential Business and Client Contacts.**</u>

    **1.**  **The Employment Agreement.**

On March 6, 2020, as a condition of his employment with Allied Universal, and in exchange for his access to Allied Universal's confidential and proprietary information and customer goodwill, Koc entered into an Employment and Non-Solicit Agreement with Allied Universal containing various post-employment obligations. (*Id*. at ¶ 6; Ex. A the "Employment Agreement"). Section 4 of the Employment Agreement contains a restrictive covenant with certain provisions that state, in relevant part:

> **<u>Restrictive Covenants</u>**. In consideration of the compensation, benefits and agreements provided for pursuant to Employee's employment and Employee's access to confidential information, valued business relationships and goodwill and specialized training, the sufficiency of which consideration is hereby acknowledged, Employee agrees to the following covenants and their terms:
>
>     **A.**    <u>**Non-Compete.**</u> Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.
>
>     I.    <u>"Competitive Activity"</u> means competing against the Company by performing the same or substantially similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company in a Prohibited Territory for an entity engaged in the Business (as

3

defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

II.      "Business"    means: (a) the business of marketing, selling and/or providing security services, including (I) guard and other contract security or event staffing services; (2) security system monitoring; (3) security system design, integration, updating and installation; (4) security and risk consulting services; (5) investigations; (6) personal protection; and (7) threat, disaster and emergency response; and (b) the business engaged in by the Company as of Employee's last day of employment with the Company.

III.      "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Employee assisted the Company to engage in the Business at any time during the last twelve (12) months of Employee's employment with the Company; and (b) any territory assigned to Employee by the Company at any time during the last twelve (12) months of Employee's employment with the Company.

**B.      Non-Interference.** Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Customer (as defined below) to purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company; (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for the Company's services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to the Company not to do business with or to reduce any part of its business with the Company; or (d) make any disparaging remarks about the Company or its business, services, affiliates, officers, managers, directors or management employees, whether in writing, verbally, or on any online forum...

i.      "Restricted Customer" means: (a) any customer or prospective customer of the Company with whom Employee had contact or communications at any time during Employee's last twelve (12) months as a Company employee; (b) any customer of the Company for whom Employee supervised the Company's account or dealings at any time during Employee's last twelve (12) months as a Company employee; and/or (c) any customer or

prospective customer of the Company about whom Employee obtained any Confidential Information (as defined below) during Employee's last twelve (12) months as a Company employee.

**C.**    **Confidential Information.** Employee agrees and acknowledges that the Company has developed Confidential Information at great time and expense and further agrees that the Company has provided and/or will provide and will continue to provide Employee with access to Confidential information and specialized training. Employee covenants and agrees that. except to the extent the use or disclosure of any Confidential Information is required to carry out Employee's assigned duties with the Company, during Employee's employment with the Company and for five (5) years thereafter: (a) Employee shall keep strictly confidential and not disclose to any person not employed by the Company any Confidential Information; and (b) Employee shall not use for Employee or for any person or entity other than the Company any Confidential Information.

However, this provision shall not preclude Employee from: (i) the use or disclosure of information known generally to the public (other than information known generally to the public as a result of Employee's violation of this Section); or (ii) any disclosure required by law or court order so long as Employee provides the Company immediate written notice of any potential disclosure under this subsection and fully cooperates with the Company to lawfully prevent or limit such disclosure.

      i. "Confidential Information" means all confidential, proprietary or business information related to the Company's Business (as defined below) that is furnished to, obtained by, or created by Employee during Employee's employment with the Company and which could be used to harm or compete against the Company. Confidential Information includes, by way of illustration, such information relating to: (a) the Company's formulae and processes used to calculate and negotiate prices to be charged customers; (b) employee wages and other personnel information; (c) Company customers, including customer lists, preferences, contact information, contractual terms, prices, and billing histories; (d) the Company's finances, including financial statements, balance sheets, sales data, forecasts, and cost analyses; (e) the Company's plans and projections for business opportunities for new or developing business, including marketing concepts and business plans; (t) the Company's research and development activities, technical data, computer files, and software; and (g) the Company's operating methods, business processes and techniques, services, products, prices, costs, service performance, and operating results.

5

      ii. "<u>Business</u>" means: (a) the business of marketing, selling and/or providing security services, including (1) guard and other contract security or event staffing services; (2) security system monitoring; and (3) security system design, integration, updating and installation; and (b) the business engaged in by the Company as of Employee's last day of employment with the Company.

      **D.**    **Employee Non-Solicitation and Non-Raiding**. Participant covenants and agrees that during Participant's employment with the Company and for a period of twenty-four (24) months following Participant's last day of employment with the Company, Participant shall not, directly or indirectly: (a) hire as an employee or as an independent contractor any person then-employed by the Company, (b) recruit, solicit or encourage any employee to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Participant's last six (6) months with the Company.

Section 6 of the Employment and Non-Compete Agreement States:

<u>**Return of Property.**</u> All property, documents, data, and Confidential Information prepared, created, accessed or collected by Employee as part of Employee's employment with the Company, in whatever form, are and shall remain the property of the Company. Employee agrees that Employee shall return upon the Company's request at any time (and, in any event, before Employee's employment with the Company ends) all documents, data, Confidential information, and other property belonging to the Company in Employee's possession or control, regardless of how stored or maintained and including all originals, copies and compilations.

In short, under the terms of the Employment Agreement, Koc is restricted from: (1) for a period of one year, engaging in competitive activity with Allied Universal by accepting employment with a competitor that is similar to and in the same geographic territory as his employment with Allied Universal; (2) for a period of two years, soliciting or accepting business from Allied Universal customers and prospective customers with whom he had material contact or about whom he learned confidential information during the course of his employment; (3) for a period of one year, soliciting or accepting business from Allied Universal customers and prospective customers with whom he had material contact or about whom he learned confidential information during the course of his employment; and (4) period of five years, using or disclosing

Allied Universal's confidential information. Koc also must return company property when his employment ends.

### 2.   The Incentive Units Agreement.

In 2022, Koc was given the opportunity to participate in Allied Universal's incentive units program, essentially making him a limited partner in the parent company, Atlas Ontario, LP and giving him an opportunity to earn lucrative incentive awards. In exchange for this significant change in his employment status, Koc entered into an Incentive Units Award Letter Agreement ("Incentive Units Agreement") with Allied Universal on February 7, 2022. (*Id*. at ¶ 8, Ex. B, "Incentive Units Agreement") (the Employment Agreement and the Incentive Units Agreement are collectively referred to as "the Agreements"). The Incentive Units Agreement contained restrictive covenants with various restrictions and promises Koc owed to Allied Universal. (*Id*).

Under the terms of the Incentive Units Agreement, Koc is restricted from: (1) for a period of one year, engaging in competitive activity with Allied Universal by accepting employment with a competitor that is similar to and in the same geographic territory as his employment with Allied Universal; (2) for a period of two years, soliciting or accepting business from Allied Universal customers and prospective customers with whom he had material contact or about whom he learned confidential information during the course of his employment; (3) for a period of two years[2], soliciting or accepting business from Allied Universal customers and prospective customers with whom he had material contact or about whom he learned confidential information during the course of his employment; and (4) period of five years, using or disclosing Allied Universal's confidential information. Koc also must return company property when his employment ends.

---

[2] The Incentive Units Agreement adds an additional year to the employee non-solicit provision.

C.     **Koc's Resignation from Allied Universal.**

On November 9, 2023, Koc submitted a resignation letter to Allied Universal, effective December 21, 2023, (*Id*. at ¶ 13; Ex. C, "Koc Resignation Letter"). Koc did not tell Allied Universal where he next planned to work.  One week later, on November 16, 2023, Allied Universal learned Koc was to begin working at Doyle Services, Inc., ("Doyle") a security services company based in the State of New York, in direct competition with Allied Universal.[3] (*Id*. at ¶¶ 15-16).

D.     **Koc's Substantial Violations of the Agreements.**

1.     **Koc Misappropriated Extensive Amounts of Confidential Information, in Violation of Paragraph 3 and 4 of the Incentive Units Agreement and Sections 4 and 6 of the Employment Agreement.**

Upon receiving information that Koc was planning to work for a competitor, Allied Universal initiated a search of Koc's electronic mail and discovered that beginning on October 16, 2023, and continuing through November 16, 2023, Koc had been sending emails from his Allied Universal email account, Salih.Koc@aus.com, to his personal email account kocsalih@hotmail.com, with dozens of proprietary, and confidential documents, and other pasted confidential information, including customer information. (*Id*. at ¶ 18). In reviewing his emails, Allied Universal also learned that on Friday, October 13, 2023, Koc emailed himself a copy of his Employment and Non-Compete Agreement which, among other things, contains his restrictive covenant and provisions defining and prohibiting the use and disclosure of confidential information. (*Id*. at ¶ 19). In other words, he *knows* this conduct violates the Agreements.

On Monday, October 16, 2023, Koc began a monthlong campaign of flagrantly violating the Agreements by emailing himself confidential information and trade secrets. These files

---

[3] Doyle's website listing the types of security services it provides can be found at: https://doylesecurityservices.com/

contained, *inter alia*, formal pricing proposals, letters of agreement to prospective clients setting forth wage rates, the approximate number of hours for its staff, and various other details specific to each client. (*Id*. at ¶ 21). They included service agreements and contracts with Allied Universal's existing clients that provide the names, addresses, and contact information of the clients, the term and scope of work of the contracts, and the bill and pay rates applicable to the security officers at the site as well as client-specific pricing sheets. (*Id*). They also included a list of employees of a predecessor entity Koc used to work for, raising suspicion that Koc wanted to violate employee non-solicit/non-raiding provisions of his Agreements. (*Id.* at ¶ 22). Finally, they include an Allied Universal organizational chart that shows the names and job titles of the managers in New York and a detailed transition plan that would be useful if a client desired to replace one security services company for another.  (*Id*).  Koc also sent himself emails that contain only pasted email signatures of contacts of Allied Universal's clients that were part of Koc's portfolio including individuals who work at clients Gucci, Givenchy, Celine, Bottega Veneta, Berluti, Stone Island and Nintendo. (*Id*. at ¶ 22).  Koc also used email to take Allied Universal's proprietary forms which could be used to build a competitor company that functions similar to Allied Universal. (*Id*. at ¶ 22). These documents include Allied Universal's disciplinary action matrix, its employee handbook, employment agreements, vendor forms, incident reports, and other similar documents.  (*Id.* at ¶¶ 23-24).

On November 16, 2023, Allied Universal summoned Koc to a meeting, informed him that Allied Universal was aware of the above-mentioned email scheme and asked him if there was any business justification for it. (*Id*. at ¶ 25-26).  Koc failed to provide any rationale or business justification for his actions.  (*Id*. at ¶ 27). Koc's resignation was accepted to become immediately effective, and he was escorted out of the office. (*Id*. at ¶ 29).  Scott Lorberbaum, Allied Universal's

Director of Human Resources for the Northeast Region ("Lorberbaum") then handed Koc a letter prepared by a law firm representing Allied Universal, which, among other things, reminded Koc of the post-employment provisions contained in Koc's Employment and Non-Compete Agreement and the Incentive Units Agreement. (*Id*. at ¶ 31); Ex. D, Koc Post-Employment Letter). The letter also contains instructions regarding the disposition of confidential information and directs Koc to contact Allied Universal's legal counsel no later than November 17th so that he could submit his electronic devices for a forensic examination. (*Id*. at ¶ 32). Koc has not returned the files he took or made any contact with Allied Universal or its attorneys. (*Id*. at ¶ 33).

> **2.    Circumstantial Evidence Strongly Suggests that Koc is Planning to Violate the Non-Compete Provisions of his Restrictive Covenants**

When questioned by Lorberbaum about his intention to work for Doyle, Koc refused to state the capacity in which he would be working for Doyle or confirm whether he would be working there at all.   (*Id* at ¶ 28). This refusal violates Paragraph 5 of the Incentive Units Agreement and Paragraph 7 of the Employment Agreement, under which Koc is obligated to notify Allied Universal of his future employers for a period of two years. (Lorberbaum Decl. ¶¶ 8-9; Ex's. A-B)

 Furthermore, on November Friday, 17, 2023, Allied Universal, through counsel, sent a letter to the Chief Execute Officer of Doyle, Mario Doyle, requesting his cooperation and information about whether Doyle was holding Allied Universal's confidential information and whether Koc would be working for Doyle in a manner that violated his Non-Compete Agreement. (*See* Declaration of Ezra Alter at ¶ 6 ("Alter Decl."); Ex. E, Letter to Doyle).

It was not until November 28, 2023, that Doyle responded to the letter indicating, through counsel, that Doyle planned to hire Koc but claiming that he did not have a confirmed start date and could not confirm Allied Universal's confidential information was not in Doyle's possession.

Pursuant to Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary injunction preventing Koc from continuing to engage in misconduct in violation of the Agreements.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Legal Standard for Temporary Injunctive Relief.

To obtain an injunction or temporary restraining order in the Second Circuit[4], a movant must establish "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Lerario v. Newyork-Presbyterian/Queens*, No. 20-CV-6295 (JGK), 2023 WL 4847141, at *4 (S.D.N.Y. July 28, 2023) (citing *New York el rex. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). Regardless of which test the court uses[5], Allied Universal qualifies for an injunction.

### B.    Allied Universal is Likely to Prevail on the Merits of its Breach of Contract Claims

Allied Universal establishes a reasonable probability of success on the merits because Koc's actions constitute multiple breaches and anticipated breaches of the Agreements he signed with Allied Universal.

---

[4] The standard for obtaining a TRO in the Second Circuit is the same as for obtaining a preliminary injunction (*Armstrong v. Miller*, 2016 WL 3149733, at *6 (N.D.N.Y. June 3, 2016); *Oeschger v. GeneThera, Inc.*, 395 F. Supp. 3d 345, 355 (D. Vt. 2019); *Metzgar v. U.A. Plumbers and Steamfitters Local No. 22 Pension Fund*, 2019 WL 1428083, at *22 (W.D.N.Y. March 28, 2019).

[5] *See Golden Krust Patties, Inc. v. Bullock,* 957 F. Supp. 2d 186, 194 (E.D.N.Y. 2013 ("To say that there is confusion in this Circuit regarding the appropriate standard for assessing an application for a preliminary injunction would be an understatement. Nevertheless, a four-part standard appears to have emerged from the reported Second Circuit cases…In addition to the two factors embraced by the Second Circuit's traditional analysis (concerning the strength of the plaintiff's claims and the irreparable harm suffered by the plaintiff absent injunctive relief), the post-*Winter* standard requires the Court to consider the public interest and to balance the competing claims of injury).

Koc is undoubtedly in violation of the Return of Property provisions of the Agreements, because he took and still will not return Allied Universal's property and items designated as Confidential Information under the Agreements. He has breached or likely will breach (1) the Non-Competition provisions of the Agreements because he has agreed to work for Doyle; (2) the Customer Non-Solicitation provisions of the Agreements because he compiled contact information of his clients and pasted it into an email he sent to himself; and (3) the Confidential Information provisions of the Agreements because he sent himself dozens of documents and pasted other information into emails he sent to himself while planning to work for a competitor.

Under New York law, to state a claim for breach of contract, Allied Universal must show: (i) the existence of a contract, (ii) Allied Universal performed in accordance with the contract, (iii) Koc breached his contractual obligations, and (iv) Koc's breach of contract has resulted in damages. *See 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022). As discussed below, the Agreements in question are enforceable contracts under New York law. As described herein, Koc has breached various restrictive covenants in the Agreements, which has caused and will continue to cause irreparable harm to Allied Universal.

### 1.      Koc is in Breach of the Agreements.

As discussed above and demonstrated by the supporting evidence, Koc has committed and likely will commit multiple violations of his post-employment agreements. First, Section 4 of the Incentive Units Agreement and Section 6 of the Employment and Non-Compete Agreement contain nearly identical provisions mandating that an employee return "all documents, data, Confidential information and other property belonging to the Company", in the "possession or control" of the employee. (Lorberbaum Decl. ¶¶ 8-9 Ex's. A-B Sec's. 4, 6). Koc is in continuous breach of this provision because he took dozens of documents, other data and confidential information and has refused to return it to Allied Universal.

Second, Koc has breached or will likely breach Sections 3B of the Incentive Units Agreement and 4A of the Employment and Non-Compete Agreement, which contain similar provisions that proscribe, among other things competing against the company for a period of twelve months by (a) performing the same or substantially similar work as Koc performed for the Company, or performing work that requires the use of or disclosure of Confidential Information, (b) for a security services company (c) within the city where Koc assisted Allied Universal (i.e. New York City), (d) at any time during the last twelve months. (*Id.* at Sec's. 3A, 4D). As is demonstrated in the Lorberbaum Declaration, Koc has agreed to work for a rival firm that holds itself out as a security services company and he has taken Confidential Information that would be exceedingly useful to compete with Allied Universal by copying its processes and stealing its clients. (*Id.* at ¶¶ 21-23). Allied Universal has made diligent efforts confirm whether Koc intends to work for Doyle within the proscribed territory (i.e., New York City), but both Koc and Doyle have refused reasonably avenues of cooperation, and have therefore provided every indication that Koc's employment will violate his restrictive covenant. (Lorberbaum Decl. at ¶ 28; Atler Decl. at ¶¶ 4-6).

Third, Koc has breached or likely will breach Sections 3A of the Incentive Units Agreement and 4D of the Employment and Non-Compete Agreement, which contain similar provisions that proscribe the use or disclosure of Confidential information, described as, among other things, "employee wages", "company customers, including customer lists, preferences, contact information, contractual terms, prices and billing histories", "marketing concepts and business plans", "company operating methods" and "business processes". (Lorberbaum Decl. ¶¶ 8-9; Ex. A Sec. 3A; Ex. B, Sec. 4D). Koc violated these provisions because he took this type of

information planning to work for Doyle, raising a likelihood that he has or plans to disclose or otherwise use this information.

Fourth, Koc has breached or likely will breach the Non-Interference provisions of Sections 3C of the Incentive Units Agreement and 4B of the Employment and Non-Compete Agreement, which contain similar prohibitions against soliciting Allied Universal's Customers/clients to purchase services from other businesses for a period of twelve months post-employment. Koc violated these provisions because he sent himself the contact information of the clients he managed while at Allied Universal and intends to work for a rival firm.

2.     **The Non-Compete and Customer Non-Solicitation Provisions in the Agreements Are Enforceable Under New York Law.**

New York courts will enforce post-employment restrictive covenants so long as they are "reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *See BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999). Employers have a legitimate interest in preventing the competitive use of goodwill and "information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." (*Id.*). "New York law recognizes that an employer may enforce restrictive covenants designed to protect its confidential information". *QBE Americas, Inc. v. Allen*, No. 22-CV-756 (JSR), 2022 WL 889838, at *9 (S.D.N.Y. Mar. 25, 2022) (citing *BDO Seidman*, 93 N.Y.3d at 389).

First, Allied Universal has a legitimate interest in the prevention of former employees exploiting or appropriating goodwill which was "created and maintained at the employer's expense, to the employer's competitive detriment." (*Id.* at 392). Koc was "enabled to share in the goodwill of a client or customer which the employer's over-all efforts and expenditures created." (*Id*). As a Client Manager, Koc's duties included extensive client contact. (Lorberbaum Decl. at ¶

10).  Koc appears ready to try and capitalize on the information he learned, and the relationships Allied Universal helped him foster, and utilize them to the benefit of his new employer, Doyle.

Furthermore, the Non-compete, and Customer Non-solicitation provisions of the Agreements are sufficiently limited so as to not be unreasonably burdensome on Koc. The Agreements are limited in time, with the non-compete provisions expiring after one (1) year and the customer non-solicit expiring no later than two (2) years from the employee's separation date. (Lorberbaum Decl. ¶¶ 8-9; Ex. A, Sec. 3A; Ex. B, Sec. 4D). Courts have routinely upheld post-employment restrictions of similar lengths as reasonable. *Frenkel Ben., LLC v. Mallory*, 142 A.D.3d 835, 838 (1st Dept. 2016) (explaining that a two-year noncompete clause was reasonably limited in time); *TBA Global, LLC v. Proscenium Events, LLC*, 114 A.D.3d 571, 572 (1st Dept. 2014) (holding that postemployment non-solicitation agreements, which prohibited employees from directly or indirectly communicating with clients or customers for periods of up to two years after termination of employment, were enforceable, since the restrictions imposed were no greater than required to protect employer's legitimate interest in client relationships); *see also Integra Optics, Inc. v. Messina*, Docket No. 900610–16, 41 N.Y.S.3d 719 (N.Y. Sup., Albany County, July 15, 2016) (stating that a one-year noncompete "falls well within prevailing notions of reasonableness" and that no geographic limitation was necessary).

The Agreements are also reasonable in scope, prohibiting competition only in the areas where Koc provided services for Allied Universal (here, New York City) and prohibiting the solicitation of customers only where (1) Koc had contact or communications with customer in the prior twelve months; (2) Koc supervised the account in the prior 12 months or; (3)  Koc obtained confidential information regarding that customer. (Lorberbaum Decl. Ex.'s A-B.). Such geographic and client-based restrictions have also been routinely upheld by courts applying New

York law. *Novendstern v. Mount Kisco Med. Group*, 177 A.D.2d 623 (2d Dept. 1991) (holding that a three-year prohibition on employee practicing within Westchester County was reasonable); *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68 (S.D.N.Y. 2021) ("New York state courts have upheld non-solicitation agreements imposing client-based restrictions without geographic limitation as reasonable in scope.").

The restrictive covenants in the Agreements are not unduly burdensome to Koc, nor do they controvert public policy. While robust and uninhibited *fair* competition is encouraged, the present situation, in which Koc engaged in a clandestine scheme to misappropriate Allied Universal's confidential information including its customer lists, is impermissible. Koc has abused his access to confidential information and is attempting to use it to compete with Allied Universal in violation of multiple provisions of his Agreements. Koc's actions constitute blatant misappropriation and/or theft, and therefore curtailing his behavior by enforcing the terms of his Agreements would promote the public policy of fair competition.

The Agreements and their respective restrictive covenants are reasonable in time and area, necessary to protect Allied Universal's legitimate business interests, are not harmful to the public, and are not unreasonably burdensome to Koc. These restraints do not unduly limit Koc from earning a living in his chosen profession or otherwise applying his talent so long as he does so outside of New York city or waits one year. Therefore, Allied Universal is likely to succeed on its breach of contract claims.[6]

/ / /

---

[6] Should the Court find any particular provision of the Agreements unenforceable, the Court is permitted to sever that clause from the Agreements and enforce the remainder of the Agreements. *BDO,* 93 N.Y.2d at 394. *BDO* explicitly endorsed "blue penciling", following the Restatement (Second) of Contracts, and rejecting "that rigid requirement of strict divisibility before a covenant could be partially enforced." *Id.* at 395 (citing Reporter's Note, Restatement [Second] of Contracts § 184, at 32).

> **3.   Allied Universal Is Likely to Succeed on Its Trade Secrets Claims Because Koc Misappropriated Allied Universal's Trade Secrets.**

An injunction is also appropriate as to Allied Universal's claims under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836 et. seq. The DTSA defines "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5). "The DTSA, contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Priv. Equity Partners, LLC v. Soto*, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018). To establish a misappropriation claim under the DTSA, a plaintiff must demonstrate that: (1) "the owner thereof has taken reasonable measures to keep such information secret"; and (2) "the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Iacovacci v. Brevet Holdings*, LLC, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1839(3)) (internal ellipses omitted).

Here, Koc misappropriated, through improper means, Allied Universals trade secrets, by sending emails from his employer issued email address to his personal email address. This type of conduct falls squarely within the misappropriation theory. *See AUA Priv. Equity Partners* 2018 *WL 1684339, at *7* ("Because [defendant] is alleged to have uploaded AUA trade secrets from her work laptop to her personal cloud-based storage without AUA's permission and in direct violation of the confidentiality agreements that she signed, the complaint plausibly alleges that she acquired the trade secrets by improper means".); *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 875 (N.D. Ill. 2001) (finding evidence of acquisition by theft under the DTSA when employee downloaded or copied trade secrets from work computer to home computer).

The misappropriated materials at issue here—which include pricing data, transition planning, and customer lists with key contacts of individuals working for specific clients—are trade secrets under the statute. They "derive independent economic value" because they are not generally known or accessible to Allied Universal's competitors who, upon learning this valuable information, could use it for economic gain. Indeed, if Koc is permitted to take and retain these confidential and proprietary materials — products of Allied Universal's extensive research and development — and share them with any of Allied Universal's competitors, the damage to Allied Universal would be immeasurable. (Lorberbaum Decl. at ¶ 21). Such disclosure would enable Koc and his employer to capitalize on Allied Universal's business models, develop counterstrategies, and gain an edge over Allied Universal in the market, thereby depriving Allied Universal of the full competitive advantage that it has diligently earned in the security market. *Id.*

Allied Universal has employed reasonable measures to maintain the secrecy of these trade secrets, including by requiring Koc and other manager level employees to sign confidentiality agreements by limiting access to confidential material to only those employees with a direct necessity to access such information in the performance of their jobs and password protecting its servers. (*Id* at 35). These actions are more sufficient to maintain the confidentiality of Allied Universal's trade secrets. *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 427 (S.D.N.Y. 2021) ("Plaintiffs must show only "sufficient secrecy," not "absolute secrecy," meaning that "except by use of improper means, there would be difficulty in acquiring the information."). *Id.* (citing *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 175 (E.D.N.Y. 2018)). *See also Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1209 (E.D. Cal. 2020) (holding the employer's efforts to protect trade secrets reasonable, as they mandated

employees to sign confidentiality agreements covering information such as "customer lists" and "marketing, financial, or other business information disclosed by the company").

Allied Universal has shown that it will succeed on its claims for violation of misappropriation of trade secrets under the DTSA.

### C.    Absent Injunctive Relief, Allied Universal Will Suffer Irreparable Harm for Which Compensatory Damages Would Not Suffice

In the absence of a preliminary injunction, Allied Universal will certainly suffer irreparable injury if Koc is allowed to keep misappropriated confidential information and share it with Doyle, a competitor firm. The harm Allied Universal faces through Koc's theft of Allied Universal's trade secrets and solicitation of Allied Universal's is likely and imminent. Irreparable harm is established when it would be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir. 1999); *See also Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004) (loss of "reputation good will, and business opportunities" constitutes irreparable harm"); *Nat'l Elevator Cab & Door Corp. v. H & B, Inc*., No. 07-CV-1562 (ERK) (RML), 2008 WL 207843, at *5 (E.D.N.Y. Jan. 24, 2008) (goodwill "typically includes not only the likelihood that customers will return to the old place of business, but the competitive advantage of an established business"). Here, Allied Universal's goodwill is threatened by Koc's misappropriation of its confidential information and planned departure to a competitor firm, and it would be nearly impossible to calculate an adequate remedy at law.

Additionally, the Agreements Koc signed explicitly state that breach of any of the restrictive covenants will result in irreparable damage to Allied Universal. (Lorberbaum Decl. Ex. A Sec. 10; Ex. B. Sec. 8).  The "Second Circuit has recognized that employment contracts

which internally acknowledge such harm might arguably be viewed as an admission by [the defendant] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision." *See Intl. Bus. Machines Corp. v. Papermaster*, 08-CV-9078(KMK), 2008 WL 4974508, at *9 (S.D.N.Y. Nov. 21, 2008) (internal quotations omitted).

Koc has demonstrated a willingness to keep misappropriated information even when confronted and asked to return it, his prospective employer refuses to cooperate despite notice of his restrictive covenants, and Allied Universal's confidential information remains unreturned and at risk of falling into the hands of a competitor firm. Therefore, in order to prevent further irreparable harm to Allied Universal, immediate injunctive relief is absolutely necessary.

### D.      The Balancing of Hardships is in Allied Universal's Favor

When it is asked to rule on a motion for a preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24, (2008). Balancing the equities requires the Plaintiff to show that the benefit…if an injunction issues will outweigh the harm to other parties". *Main St. Baseball, LLC v. Binghamton Mets Baseball Club*, Inc., 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015).

The hardships are balanced in Allied Universal's favor. Koc contracted to comply with the restrictive covenants, which prevent unfair business competition and theft of confidential information. In direct contravention of the Agreements, Koc has absconded with Allied Universal's Confidential Information in a seeming attempt to solicit Allied Universal's customers, clients and employees. Allied Universal is merely seeking to uphold the Agreements and prohibit further breach of the restrictive covenants.

Enforcing the limited restraints outlined in the restrictive covenants would not cause Koc any injury, but Allied Universal would surely continue to suffer if an injunction were not granted.

This relief does not seek to prevent Koc from engaging in business outside of New York City (he lives in Long Island), but instead only prevents him from misappropriating client relationships, soliciting Allied Universal employees, and disclosing confidential information Koc was paid to keep confidential.

**E.    The Issuance of an Injunction Is in the Public Interest.**

Given the very serious nature of the conduct at issue in this case, the granting of injunctive relief will not adversely affect public policy or the public interest. New York law does not prohibit non-competition and non-solicitation agreements such as those entered into here by Koc. New York courts "carefully scrutinize but ultimately enforce employment agreements' restrictive covenants not to compete under a common-law standard of reasonableness" and recognize "that an employer may enforce restrictive covenants designed to protect its confidential information." *QBE Americas* 2022 WL 889838, at *6, 9.

It is certainly within the public interest that property is returned, and confidential information is not stolen and used unlawfully to compete with a former employer.

The public also has an interest in ensuring that contracts are upheld and that individuals do what they promise to do. Koc voluntarily agreed to the terms in the Agreements, which specifically forbade the use and disclosure of Allied Universal's trade secrets and confidential information, including customer information, the solicitation of Allied Universal's customers for a designated period, and limited the geographic scope of Koc's next place of employment with a direct competitor. Allied Universal simply seeks to enforce its legitimate business interests in a manner that does not restrain trade. Accordingly, the relief requested by Allied Universal will serve the public interest by promoting confidence in the sanctity of reasonable contracts.

IV.    **CONCLUSION**

For these reasons, Allied Universal respectfully requests that the Court enter a temporary restraining order, or, in the alternative, a temporary injunction, consistent with the proposed order attached for the Court's convenience.

Dated: December 5, 2023          /s/ Ezra Alter
                                 Ezra H. Alter, Esq
                                 Martenson, Hasbrouck & Simon LLP
                                 40 Exchange Place
                                 Suite 1502
                                 New York, NY 10005
                                 (332) 345-2476
                                 ealter@martensonlaw.com

                                 -and-

                                 Matthew D. Crawford, Esq
                                 Pro Hac Vice Application Forthcoming
                                 Martenson, Hasbrouck & Simon LLP
                                 2573 Apple Valley Road NE
                                 Atlanta, Georgia 30319
                                  (404) 909-8101

                                 Attorneys for Plaintiff
                                 UNIVERSAL PROTECTION SERVICE, LLC, D/B/A
                                 ALLIED UNIVERSAL SECURITY SERVICES