# EXHIBIT 1

**EXHIBIT 1**



**MARTENSON**
**HASBROUCK**
**& SIMON LLP**

Ezra Alter
Attorney at Law
332-245-2476
ealter@martensonlaw.com

November 17, 2023

**<u>Via UPS Delivery</u>**
Mario J. Doyle, CPP
President & CEO
Doyle Security Services
371 Merrick Rd.
Rockville Centre, NY 11570

Re: Salih Koc- Post Employment Obligations

Please be advised that this firm represents Universal Services of America, LP, and its affiliated companies, including Universal Protection Service LLC d/b/a Allied Universal Security Services (hereinafter referred to collectively as "Allied Universal" or the "Company"). If your company is represented by outside counsel, please forward this letter to your lawyer.

I am writing to address the employment of Salih Koc, a former employee of Allied Universal, whom we believe has accepted a position with Doyle Security Services ("Doyle"). It has come to our attention that Mr. Koc's employment may potentially violate the terms of his Incentive Units Award Restrictive Covenant Agreement and his Universal Services of America Employment and Non-Compete Agreement (the "Agreements"), that were executed on or about March 6, 2020, and February 7, 2022, respectively, with Allied Universal. I am enclosing a copy of the Agreements herewith for your review.

The Agreements directly and unequivocally prohibit Mr. Koc from competing against Allied Universal in any of the cities, counties, or assigned territories where he previously worked for the Company. Additionally, the Agreements prohibit Mr. Koc from soliciting Allied Universal's customers or employees, discouraging suppliers from doing business with the Company, and making disparaging remarks about Allied Universal. These restrictions, at a minimum, remain in effect for twenty-four (24) months from his last day of employment with Allied Universal, which was on November 16, 2023. Furthermore, Mr. Koc is bound by a restriction from misusing or revealing Allied Universal's confidential information for a duration of five (5) years following the last day of his employment.

Allied Universal takes the restrictions outlined in the Agreements seriously and expects strict adherence to them. Allied Universal is also concerned that Mr. Koc's employment with Doyle may violate the Non-Compete terms of the Agreements. Allied Universal is investigating this matter and considering its legal options. One of the purposes of this letter is to give Doyle the opportunity to participate in this investigation, specifically, by providing information on Koc's job duties, responsibilities, and geographic territory. Moreover, even if the Agreements do not outright prohibit Koc's employment with Doyle, Allied Universal still expects that he will comply with the Non-Solicitation and Confidentiality provisions contained therein. Finally, Allied Universal

Mario J. Doyle
November 17, 2023
Page 2

demands assurances that Doyle has not received, and will not accept, Allied Universal's confidential information or trade secrets from Koc.

If I do not hear from you by November 22, 2023, I will assume Doyle Security Services has no interest in discussing these matters or resolving these issues amicably. Consequently, Allied Universal will proceed accordingly and decisively, including seeking a temporary restraining order, pursuing claims for damages, and recovering the attorneys' fees and costs it was forced to incur as a result of any legal action.

Doyle is hereby instructed to retain all documents and communications (in whatever form, including emails, text messages, and records of telephone conversations) in its possession, custody, or control related to the issues raised in this letter.

Sincerely yours,

Ezra Alter, Esq.
**MARTENSON, HASBROUCK & SIMON LLP**

cc. Matthew Crawford, Esq.

w/ Encl.

EXHIBIT A

**ATLAS ONTARIO LP**
**INCENTIVE UNITS AWARD RESTRICTIVE COVENANT AGREEMENT**

This Incentive Units Award Restrictive Covenant Agreement (this "**Restrictive Covenant Agreement**") is made effective as of February 7, 2022 (the "**Grant Date**"), by and between Atlas Ontario LP, a limited partnership formed under the laws of the Province of Ontario, Canada (the "**Company**"), and _____ (the "**Participant**" and together with the Company, the "**Parties**").

**RECITALS**

**WHEREAS**, the Participant provides services to, or for the benefit of, the Company;

**WHEREAS**, pursuant to that certain Incentive Units Award Letter Agreement by and between the Company and the Participant, dated February 7, 2022 (the "**Grant Agreement**"), the Company awarded Incentive Units (as defined in the Grant Agreement) of the Company to the Participant, on the terms set forth therein;

**WHEREAS**, the award of such Incentive Units was expressly conditioned on the Participant's agreement to and execution of this Restrictive Covenant Agreement;

**WHEREAS**, the Parties agree that this Restrictive Covenant Agreement is necessary to protect the Company's legitimate business interests;

**NOW, THEREFORE,** in exchange for the promises and mutual covenants contained in this Restrictive Covenant Agreement, the Parties, intending legally to be bound, agree as follows:

1.    Consideration.  In exchange for the Participant entering into this Restrictive Covenant Agreement, the Company has agreed to award Incentive Units to the Participant and to provide Participant with continued and additional access to confidential information, goodwill and specialized training.  Participant agrees that (a) Participant would not be eligible for the Incentive Units and increased access to confidential information but for Participant signing this Restrictive Covenant Agreement, and (b) this Restrictive Covenant Agreement is supported by good and valuable consideration, to which Participant is not otherwise entitled.

2.    Conflicts.  During the Participant's employment with the Company, Participant shall not:  (a) engage in any outside business activity without written authorization from the Company; (b) in any way compete with the Company; (c) solicit anyone to compete with or to prepare to compete with the Company; and/or (d) engage in any conduct intended to or reasonably expected to harm the interests of the Company or any affiliate.

3.    Restrictive Covenants.  In consideration of the award of Incentive Units pursuant to the Grant Agreement and Participant's access to confidential information and specialized

training, the sufficiency of which consideration is hereby acknowledged, Participant agrees to the following covenants and their terms:

A.      Confidential Information.  Participant agrees and acknowledges that the Company has developed Confidential Information at great time and expense and further agrees that the Company has provided and/or will provide and will continue to provide Participant with access to Confidential Information and specialized training.  Participant covenants and agrees that, except to the extent the use or disclosure of any Confidential Information is required to carry out Participant's assigned duties with the Company, during Participant's employment with the Company and for as long as such information remains commercially valuable and non-public, but in no event for no less than five (5) years after the end of Participant's employment:  (a) Participant shall keep strictly confidential and not disclose to any person not employed by the Company any Confidential Information; and (b) Participant shall not use for Participant or for any other person or entity any Confidential Information.  This provision shall not preclude Participant from the use or disclosure of information known generally to the public (other than information known generally to the public as a result of Participant's violation of this Section).

i.      Notwithstanding anything herein to the contrary, nothing in this Restrictive Covenant Agreement shall (a) prohibit Participant from making reports of possible violations of federal law or regulation to any governmental agency or entity in accordance with the provisions of and rules promulgated under Section 21F of the Securities Exchange Act of 1934, as amended, or Section 806 of the Sarbanes-Oxley Act of 2002, or of any other whistleblower protection provisions of state or federal law or regulation, or (b) require notification or prior approval by the Company of any reporting described in clause (a); provided, however, that Participant is not authorized to disclose communications with counsel that were made for the purpose of receiving legal advice or that contain legal advice or that are protected by the attorney work product or similar privilege.  Furthermore, Participant shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (x) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney, in each case, solely for the purpose of reporting or investigating a suspected violation of law or (y) in a complaint or other document filed in a lawsuit or proceeding, if such filings are made under seal.

ii.      "Confidential Information" means all confidential, proprietary or business information related to the Company's Business (as defined below) that is furnished to, obtained by, or created by Participant during Participant's employment with the Company and which could be used to harm or compete against the Company. Confidential Information includes, by way of illustration, such information relating to:  (a) the Company's formulae and processes used to calculate and negotiate prices to be charged customers; (b) employee wages, qualification and other personnel information; (c) Company customers, including customer lists, preferences, contact information, contractual terms, prices, and billing histories; (d) the Company's finances, including financial statements, balance sheets, sales data, forecasts, and cost analyses; (e) the Company's plans and projections for

business opportunities for new or developing business, including marketing concepts and business plans; (f) the Company's research and development activities, technical data, computer files, and software; and (g) the Company's operating methods, business processes and techniques, services, products, prices, costs, service performance, and operating results.

B.      Non-Competition.    Participant covenants and agrees that during Participant's employment with the Company and for a period of twelve (12) months following Participant's last day of employment with the Company, Participant shall not:  (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.

        i.      "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Participant performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company or performing work that requires the use of or disclosure of Confidential Information anywhere in a Prohibited Territory for an entity engaged in the Business (as defined below).  Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

        ii.     "Business" means:  the business engaged in by the Company at any time during the last twelve (12) months of Participant's employment with the Company, as limited to the line or lines of business that are the same or substantially similar to those for which the Participant performed services on behalf of the Company.

        iii.    "Prohibited Territory" means:  (a) each city and county (or equivalent local unit of government) where Participant assisted the Company to engage in the Business at any time during the last twelve (12) months of Participant's employment with the Company; and (b) any territory assigned to Participant by the Company at any time during the last twelve (12) months of Participant's employment with the Company.

C.      Customer Non-Solicitation and Non-Interference.  Participant covenants and agrees that during Participant's employment with the Company and for a period of twenty-four (24) months following Participant's last day of employment with the Company, Participant shall not, directly or indirectly:  (a) solicit, encourage, cause or attempt to cause any Restricted Customer (as defined below) to purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company, (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for the Company's services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to the Company not to do business with or to reduce any part of its business with the Company; or (d) make any disparaging remarks about the Company or its business,

services, affiliates, officers, managers, directors or management employees, whether in writing or verbally, to any Restricted Customer.

      i.      "Restricted Customer" means: (a) any customer of the Company with whom Participant had contact or communications at any time during Participant's last twelve (12) months as a Company employee; (b) any customer of the Company for whom Participant supervised the Company's account or dealings at any time during Participant's last twelve (12) months as a Company employee; and/or (c) any customer of the Company about whom Participant obtained any Confidential Information (as defined above) during Participant's last twelve (12) months as a Company employee.

      D.      Employee Non-Solicitation and Non-Raiding. Participant covenants and agrees that during Participant's employment with the Company and for a period of twenty-four (24) months following Participant's last day of employment with the Company, Participant shall not, directly or indirectly: (a) hire as an employee or as an independent contractor any person then-employed by the Company, (b) recruit, solicit or encourage any employee to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Participant's last six (6) months with the Company.

      4.      Return of Property. All property, documents, data, and Confidential Information prepared, created, accessed or collected by Participant as part of Participant's employment with the Company, in whatever form, are and shall remain the property of the Company. Participant agrees that Participant shall return upon the Company's request at any time (and, in any event, before Participant's employment with the Company ends) all documents, data, Confidential information, and other property belonging to the Company in Participant's possession or control, regardless of how stored or maintained and including all originals, copies and compilations.

      5.      Future Employers. Participant agrees to promptly notify the Company in writing of the name and address of each business with whom Participant is associated (as an employee or as an independent contractor) for a period of twenty four (24) months following the end of Participant's employment with the Company. Participant further: (a) agrees that the Company may notify any such business about the existence and terms of this Restrictive Covenant Agreement; (b) irrevocably consents to any such notification; and (c) covenants not to sue the Company based on any such notification.

      6.      Affiliates. For purposes of this Restrictive Covenant Agreement and the restrictions in Section 3, the "**Company**" shall mean: (a) the Company as defined above; and (b) any affiliate, subsidiary, predecessor or successor of the Company for or with whom Participant performed any services at any time during the last twelve (12) months of Participant's employment with the Company.

      7.      Reasonableness. Participant has carefully read and considered the provisions of this Restrictive Covenant Agreement and, having done so, agrees that the restrictions set forth herein are fair, reasonable, and necessary to protect the Company's legitimate business interests, including its goodwill with its customers and employees and its Confidential Information. In

addition, Participant acknowledges and agrees that (a) Participant's abilities and skills are readily useable in a variety of capacities in most geographic areas such that the foregoing restrictions do not unreasonably restrict Participant with respect to seeking employment elsewhere in non-competitive ventures should Participant's employment with the Company end; (b) the relationship between the Company and its customers are of a near-permanent nature and but for Participant's association with the Company, Participant would not have had contact with the Company's customers; and (c) the information to which Participant has had or will have access is of a confidential and proprietary nature, and the good will of the Company and/or customer and supplier relationships which Participant has or will enjoy while employed by the Company are significant and valuable to the Company. Thus, Participant agrees not to contest the general validity or enforceability of this Restrictive Covenant Agreement before any court, arbitration panel or other body. Participant's restrictions and obligations in Section 3 shall survive Participant's last day of employment with the Company and shall be in addition to any restrictions imposed upon Participant by statute, at common law, or in other agreements. The restrictive covenants contained in Section 3 shall continue to be enforceable regardless of whether there is any dispute between the Parties concerning any alleged breach of this Restrictive Covenant Agreement.

8.      Breach By Participant; Attorneys' Fees. Participant agrees that Participant's breach of any of the Restrictive Covenants will result in irreparable damage and continuing injury to the Company. Therefore, in the event of any breach or threatened breach of such covenants, the Company shall be entitled to an injunction from a court of competent jurisdiction enjoining Participant from committing any violation of those covenants, and Participant hereby consents to the issuance of such an injunction. Participant further agrees that the Company shall not be required to post a bond to obtain such an injunction. All remedies available to the Company by reason of a breach by Participant of the provisions of this Restrictive Covenant Agreement are cumulative, none is exclusive, and all remedies may be exercised concurrently or consecutively at the Company's option. Further, in the event of a breach or violation by Participant of any of the provisions of this Restrictive Covenant Agreement, the term thereof, as the case may be, shall be tolled until such breach or violation has been fully cured. In the event a court finds or concludes that Participant breached this Restrictive Covenant Agreement at any stage of litigation (including by issuing a temporary restraining order, preliminary injunction or permanent injunction) or issues any similar order enjoining Participant from breaching this Restrictive Covenant Agreement, then all attorneys' fees and costs actually and reasonably incurred in connection with the prosecution of such legal proceeding shall be awarded to the Company. Such fees and costs shall be in addition to any fees and costs recoverable under applicable law.

9.      Assignment. This Restrictive Covenant Agreement, being personal in nature to Participant, may not be assigned or delegated by Participant. The Company shall have the right to assign or transfer this Restrictive Covenant Agreement to any affiliated entity or any successor to all or part of its business or assets, and Participant irrevocably consents to any such assignment or transfer. As used in this Restrictive Covenant Agreement, the "**Company**" shall include the Company as defined above and any affiliated entity or successor to which this Restrictive Covenant Agreement is assigned or transferred.

10.     Governing Law. All issues and questions concerning the construction, validity, interpretation and enforceability of this Restrictive Covenant Agreement (and the related Grant

Agreement) and the exhibits and schedules hereto, and their negotiation, execution, performance or nonperformance, interpretation, termination, construction and all matters based upon, arising out of or related to any of the foregoing, whether arising in law or equity, shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. The Participant irrevocably waives any objection to the application of Delaware law to the aforesaid actions or proceedings arising out of or in connection with this Restrictive Covenant Agreement. The Participant agrees that service of process upon the Participant in any action shall be effective if notice is delivered to the address or facsimile of the Participant set forth on the books of the Company or any other address or facsimile number as the Participant may hereafter specify for such purpose to the Company.

11.    WAIVER OF JURY TRIAL.    EACH PARTY HERETO IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING (INCLUDING COUNTERCLAIMS) RELATING TO OR ARISING OUT OF OR IN CONNECTION WITH THIS RESTRICTIVE COVENANT AGREEMENT OR ANY OF THE TRANSACTIONS OR RELATIONSHIPS HEREBY CONTEMPLATED OR OTHERWISE IN CONNECTION WITH THE ENFORCEMENT OF ANY RIGHTS OR OBLIGATIONS HEREUNDER.

12.    Severability.    If a court of competent jurisdiction or an arbitration panel determines that any provision of this Restrictive Covenant Agreement is invalid, illegal, or incapable of being enforced, then the Parties request that such court or panel modify such provision by "blue-penciling" or otherwise in order to render such provision not invalid, illegal, or incapable of being enforced and then enforce the provision as modified. The Parties further agree that each provision of this Restrictive Covenant Agreement is severable from each other provision of this Restrictive Covenant Agreement.

13.    Headings.    The headings of this Restrictive Covenant Agreement are inserted for convenience only and are not to be considered in the construction of the provisions hereof.

14.    Counterparts.    The Restrictive Covenant Agreement may be executed in one or more counterparts, all of which, taken together, shall constitute one and the same agreement.

15.    Modification; Waiver; Construction; Counterparts.    No modification, termination, or attempted waiver of any of the provisions of this Restrictive Covenant Agreement shall be binding upon the Company unless reduced to writing and signed by a duly authorized Company official. This Restrictive Covenant Agreement shall be construed according to a plain reading of its terms and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision in this Restrictive Covenant Agreement. The word "including" in this Restrictive Covenant Agreement means "including without limitation". Any number of counterparts of this Restrictive Covenant Agreement may be signed and delivered, each

of which shall be considered an original and all of which, together, shall constitute one and the same instrument.

16.    <u>Entire Agreement</u>.  This Restrictive Covenant Agreement, together with the Grant Agreement and the Amended and Restated Agreement of Limited Partnership of the Company, dated as of April 6, 2021, and all agreements referenced herein or therein, and any schedules, exhibits and other documents referred to herein or therein (including Participant's employment agreement, if any, with the Company), constitute the entire agreement and understanding between Participant and the Company with respect to the subject matter hereof and thereof and supersedes all prior and contemporaneous arrangements and understandings, both oral and written, whether in term sheets, presentations or otherwise among the parties hereto, or between any of them, with respect to the subject matter hereof and thereof, <u>provided that</u> it does not supersede any obligations of Participant to the Company under other fully executed, written agreements, including any employment agreements, restrictive covenants, non-compete agreements, non-solicitation agreements and/or confidentiality and non-disclosure agreements, such that all covenants and restrictions in any such agreements shall remain in full force and effect in addition to the covenants set forth in this Restrictive Covenant Agreement.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the parties hereto have executed this Restrictive Covenant Agreement as of the date first written above.

**ATLAS ONTARIO LP**

By: _Steve Jones_
Name: Steve Jones
Title: Chief Executive Officer

**PARTICIPANT**

_[signature]_

*[Restrictive Covenant Agreement Signature Page]*

**UNIVERSAL SERVICES OF AMERICA**
**EMPLOYMENT AND NON-COMPETE AGREEMENT**
**New York**

**THIS EMPLOYMENT AND NON-COMPETE AGREEMENT** (the "Agreement") is made and entered into by and between **Salih Koc** ("Employee") and Universal Services of America, LP together with its subsidiaries, affiliates and related companies (collectively referred to as the "Company"). Employee and the Company are collectively referred to as the "Parties".

**WITNESSETH:**

**WHEREAS**, as part of the Company's acquisition of SOS Security, Inc ("SOS"), Employee's former employer, the Company has extended an offer of employment to Employee and Employee wishes to accept that offer; and

**WHEREAS,** in connection with Employee's employment with the Company, employee will be given access to the Company's Confidential Information (as that term is defined below) and customer relationships, to which Employee did not previously have access during Employee's employment with SOS; and

**WHEREAS**, the Parties agree that this Agreement is necessary to protect the Company's legitimate business interests.

**NOW, THEREFORE,** in exchange for the promises and mutual covenants contained in this Agreement, the Parties, intending legally to be bound, agree as follows:

1.     **Consideration**. In exchange for Employee entering into this Agreement, the Company has agreed to hire Employee, to make Employee eligible for the Company's benefit programs (as set forth in the applicable Company policy documents) and to provide Employee access to confidential information, valued business relationships and goodwill and specialized training to which Employee did not heretofore have access. Employee agrees that (a) Employee would not be eligible for employment with the Company but for Employee signing this Agreement, and (b) this Agreement is supported by good and valuable consideration, to which Employee is not otherwise entitled.

2.     **Employment**. Employee shall be employed by the Company on an at-will basis, such that Employee may resign at any time and the Company may terminate Employee's employment at any time. The at-will nature of Employee's employment may be altered only by a written agreement signed by the Company's Chief Executive Officer. The terms of this Agreement, including but not limited to the Restrictive Covenants contained herein, shall remain in place throughout Employee's employment with the Company, regardless of the position held by the Employee, unless this Agreement is revised or replaced by a subsequent written agreement that specifically states that it supersedes this Agreement.

3.     **Conflicts**. During Employee's employment with the Company, Employee shall not: (a) engage in any outside business activity without written authorization from the Company; (b) in any way compete with the Company; (c) solicit anyone to compete with or to prepare to

compete with the Company; and/or (d) engage in any conduct intended to or reasonably expected to harm the interests of the Company or any affiliate.

4.    **Restrictive Covenants**.    In consideration of the compensation, benefits and agreements provided for pursuant to Employee's employment and Employee's access to confidential information, valued business relationships and goodwill and specialized training, the sufficiency of which consideration is hereby acknowledged, Employee agrees to the following covenants and their terms:

A.    **Non-Compete**. Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.

   i.    "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company in a Prohibited Territory for an entity engaged in the Business (as defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

   ii.    "Business" means: (a) the business of marketing, selling and/or providing security services, including (1) guard and other contract security or event staffing services; (2) security system monitoring; (3) security system design, integration, updating and installation; (4) security and risk consulting services; (5) investigations; (6) personal protection; and (7) threat, disaster and emergency response; and (b) the business engaged in by the Company as of Employee's last day of employment with the Company.

   iii.    "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Employee assisted the Company to engage in the Business at any time during the last twelve (12) months of Employee's employment with the Company; and (b) any territory assigned to Employee by the Company at any time during the last twelve (12) months of Employee's employment with the Company.

B.    **Non-Interference**. Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Customer (as defined below) to purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company; (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for the Company's services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to the Company not to do business with or to reduce any part of its business with

New York

the Company; or (d) make any disparaging remarks about the Company or its business, services, affiliates, officers, managers, directors or management employees, whether in writing, verbally, or on any online forum. For the purposes of this Section of the Agreement, Employee acknowledges and agrees that the Company is engaged in lines of business beyond those in which the Employee may be directly engaged, including event and temporary staffing services; guard and other contract security services; security system monitoring; security system design, integration, updating and installation; security and risk assessment; and/or janitorial services. This Section's prohibitions against solicitation apply to all such lines of business.

   i.      "Restricted Customer" means: (a) any customer or prospective customer of the Company with whom Employee had contact or communications at any time during Employee's last twelve (12) months as a Company employee; (b) any customer of the Company for whom Employee supervised the Company's account or dealings at any time during Employee's last twelve (12) months as a Company employee; and/or (c) any customer or prospective customer of the Company about whom Employee obtained any Confidential Information (as defined below) during Employee's last twelve (12) months as a Company employee.

**C.      Non-Raiding.** Employee covenants and agrees that for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) hire or engage as an employee or as an independent contractor any person employed by the Company; (b) recruit, solicit or encourage any employee or independent contractor to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Employee's last six (6) months with the Company.

**D.      Confidential Information.** Employee agrees and acknowledges that the Company has developed Confidential Information at great time and expense and further agrees that the Company has provided and/or will provide and will continue to provide Employee with access to Confidential Information and specialized training. Employee covenants and agrees that, except to the extent the use or disclosure of any Confidential Information is required to carry out Employee's assigned duties with the Company, during Employee's employment with the Company and for five (5) years thereafter: (a) Employee shall keep strictly confidential and not disclose to any person not employed by the Company any Confidential Information; and (b) Employee shall not use for Employee or for any person or entity other than the Company any Confidential Information. However, this provision shall not preclude Employee from: (i) the use or disclosure of information known generally to the public (other than information known generally to the public as a result of Employee's violation of this Section); or (ii) any disclosure required by law or court order so long as Employee provides the Company immediate written notice of any potential disclosure under this subsection and fully cooperates with the Company to lawfully prevent or limit such disclosure.

   i.      "Confidential Information" means all confidential, proprietary or business information related to the Company's Business that is furnished to, obtained by,

2                                                                          New York

or created by Employee during Employee's employment with the Company and which could be used to harm or compete against the Company. Confidential Information includes, by way of illustration, such information relating to: (a) the Company's formulae and processes used to calculate and negotiate prices to be charged customers; (b) employee wages and other personnel information; (c) Company customers, including customer lists, preferences, contact information, contractual terms, prices, and billing histories; (d) the Company's finances, including financial statements, balance sheets, sales data, forecasts, and cost analyses; (e) the Company's plans and projections for business opportunities for new or developing business, including marketing concepts and business plans; (f) the Company's research and development activities, technical data, computer files, and software; and (g) the Company's operating methods, business processes and techniques, services, products, prices, costs, service performance, and operating results.

ii.      Notwithstanding the foregoing, nothing in this Agreement prohibits Employee from reporting waste, fraud, abuse and/or possible violations of law or regulation to any government agency or entity or making other disclosures that are protected under the whistleblower provisions of federal, state, or local law or regulation.  Solely in connection with such reporting, Employee may disclose Confidential Information, in confidence, to a government official or to an attorney to address possible violations of the law; however, any disclosure of Confidential Information must be in good faith and effectuated in a manner that prevents the dissemination of Confidential Information beyond those persons necessary to make the report or filing, such as filing the Confidential Information under seal and otherwise preventing it from being publicly disclosed.  While Employee is encouraged to bring any such possible violation to the attention of the Company, Employee does not need the prior authorization of Company to make any such reports or disclosures to these entities.

iii.     The Company also reserves the right to avail itself of the remedies available under the Defend Trade Secrets Act of 2016, which remedies include injunctive relief, damages for actual loss or unjust enrichment caused by the misappropriate of the Company's Confidential Information, and exemplary damages in an amount not more than two times the amount of actual damages. However, federal law provides that an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document

New York

containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.

5.    **Intellectual Property**.    Employee shall promptly and fully disclose all Intellectual Property (as defined below) to the Company, and Employee acknowledges and agrees that all Intellectual Property is the property of the Company. Employee hereby assigns and agrees in the future to assign to the Company Employee's full right, title and interest in and to all Intellectual Property. Employee agrees to provide during and after the term of this Agreement all further cooperation that the Company determines is desirable to accomplish the complete transfer of the Intellectual Property to the Company. All copyrightable works that Employee creates during Employee's employment with the Company shall be considered "work made for hire" and shall be owned exclusively by the Company.

    i.    "Intellectual Property" means any invention, formula, process, discovery, work of authorship, development, design, innovation or improvement made, conceived or first actually reduced to practice by Employee, solely or jointly with others, during Employee's employment with the Company and that: (a) is developed using the equipment, supplies, facilities or trade secret information of the Company; or (b) relates at the time of conception or reduction to practice to: (i) the Business of the Company, (ii) the actual or demonstrably anticipated research or development of the Company, or (iii) any work performed by Employee for the Company.

6.    **Return of Property**.    All property, documents, data, and Confidential Information prepared or collected by Employee as part of Employee's employment with the Company, in whatever form, are and shall remain the property of the Company. Employee agrees that Employee shall return upon the Company's request at any time (and, in any event, before Employee's employment with the Company ends) all documents, data, Confidential Information, and other property belonging to the Company in Employee's possession or control, regardless of how stored or maintained and including all originals, copies and compilations.

7.    **Future Employers**.    Employee agrees to promptly notify the Company in writing of the name and address of each business with whom Employee is associated (as an owner, employee or independent contractor) for a period of twelve (12) months following the end of Employee's employment with the Company. Employee further: (a) agrees that the Company may notify any such business about the existence and terms of this Agreement; (b) irrevocably consents to any such notification; and (c) covenants not to sue the Company based on any such notification.

8.    **Affiliates**.    For purposes of this Agreement, including the restrictions in Section 4, the "Company" shall mean: (a) the Company as defined above; and (b) any affiliate, successor or predecessor of the Company for or with whom Employee performed any services at any time during the last twelve (12) months of Employee's employment with the Company.

9.    **Reasonableness**.    Employee has carefully read and considered the provisions of this Agreement and, having done so, agrees that the restrictions set forth herein are fair, reasonable, and necessary to protect the Company's legitimate business interests, including its

New York

goodwill with its customers and employees and its Confidential Information. In addition, Employee acknowledges and agrees that (a) Employee's abilities and skills are readily useable in a variety of capacities in most geographic areas such that the foregoing restrictions do not unreasonably restrict Employee with respect to seeking employment elsewhere in non-competitive ventures should Employee's employment with the Company end; (b) the relationship between the Company and its customers are of a near-permanent nature and but for Employee's association with the Company, Employee would not have had contact with the Company's customers; and (c) the information to which Employee has had or will have access is of a confidential and proprietary nature, and the goodwill of the Company and/or customer and supplier relationships which Employee has or will enjoy while employed by the Company are significant and valuable to the Company. Thus, Employee agrees not to contest the general validity or enforceability of this Agreement before any court, arbitration panel or other body. Employee's restrictions and obligations in Section 4 (the "Post Separation Obligations") shall survive Employee's last day of employment with the Company and shall be in addition to any restrictions imposed upon Employee by statute, at common law, or in other agreements. The Post Separation Obligations shall continue to be enforceable regardless of whether there is any dispute between the Parties concerning any alleged breach of this Agreement.

10.     **Breach By Employee.** Employee agrees that Employee's breach of any of the Post Separation Obligations will result in irreparable damage and continuing injury to the Company. Therefore, in the event of any breach or threatened breach of such covenants, the Company shall be entitled to an injunction from a court of competent jurisdiction enjoining Employee from committing any violation of those covenants, and Employee hereby consents to the issuance of such an injunction. Employee further agrees that the Company shall not be required to post a bond to obtain such an injunction. All remedies available to the Company by reason of a breach by Employee of the provisions of this Agreement are cumulative, none is exclusive, and all remedies may be exercised concurrently or consecutively at the Company's option. Further, in the event of a breach or violation by Employee of any of the provisions of this Agreement, the effective time period of such provision shall be tolled until such breach or violation has been fully cured.

11.     **Lack of Conflict With Past Employment.** Employee acknowledges that Employee is not bound by any non-compete or non-solicitation restriction with any organization that would restrict the fulfillment of the terms of Employee's employment with the Company. Employee further acknowledges and agrees that the Company has not asked and will not permit Employee to use or disclose any prior employer's confidential information or trade secrets.

12.     **Assignment.** This Agreement, being personal in nature to Employee, may not be assigned or delegated by Employee. The Company shall have the right to assign or transfer this Agreement to any affiliated entity or any successor to all or part of its business or assets, and Employee irrevocably consents to any such assignment or transfer. As used in this Agreement, the "Company" shall include the Company as defined above and any affiliated entity or successor to which this Agreement is assigned or transferred.

13.     **Law; Venue; Jurisdiction; No Jury.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to any conflict-of-law principles. To the extent Employee has entered into a written arbitration agreement with

5

New York

the Company, the provisions of such arbitration agreement shall govern the resolution of any dispute between the Company and Employee arising out of or relating to this Agreement, except that any litigation under this Agreement to enforce the Post Separation Obligations shall be brought by either party in state or federal court in New York as the parties agree and acknowledge that claims relating to the Post Separation Obligations under this particular Agreement are not subject to arbitration, and either party may seek to enforce them in state or federal court in New York. As such, the Parties irrevocably consent to the jurisdiction and venue of the courts in New York (whether federal or state) for all disputes related to the Post Separation Obligations in this Agreement and irrevocably consent to service via nationally recognized overnight carrier, without limiting other service methods allowed by applicable law. In addition, each of the Parties irrevocably waives any right to a trial by jury in any action related to the Post Separation Obligations in this Agreement.

14.    **Severability**.    If a court of competent jurisdiction or an arbitration panel determines that any provision of this Agreement is invalid, illegal, or incapable of being enforced, then the Parties request that such court or panel modify such provision by "blue-penciling" or otherwise in order to render such provision not invalid, illegal, or incapable of being enforced and then enforce the provision as modified. The Parties further agree that each provision of this Agreement is severable from each other provision of this Agreement.

15.    **Headings**. The headings of this Agreement are inserted for convenience only and are not to be considered in the construction of the provisions hereof.

16.    **Counterparts**. The Agreement may be executed in one or more counterparts, each of which shall be considered an original and all of which, taken together, shall constitute one and the same agreement.

17.    **Modification; Waiver; Construction; Counterparts**.    No modification, termination, or attempted waiver of any of the provisions of this Agreement shall be binding upon the Company unless reduced to writing and signed by a duly authorized Company official. This Agreement shall be construed according to a plain reading of its terms and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision in this Agreement. Any reference in this Agreement to any Section refers to the corresponding Section of this Agreement. The word "including" in this Agreement means "including without limitation".

18.    **Entire Agreement**. This Agreement (including the recitals which are hereby incorporated by reference) constitutes the entire agreement among the Parties pertaining to the subject matter contained herein and supersedes any and all prior and contemporaneous agreements, representations and understandings of the Parties related to the subject matter contained herein, provided that it does not supersede any obligations of Employee to the Company under other fully executed, written agreements.

IN WITNESS WHEREOF, the parties have executed and agreed to this Agreement.

**UNIVERSAL SERVICES OF AMERICA, LP**

New York

By: _____      Date: _____

Its:

**EMPLOYEE**

_____      Date: _3/6/2020_____

New York